IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| HILDA MARQUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 09-CV-67-KC |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered Plaintiff Hilda Marquez's ("Plaintiff") "Objections to Magistrate Judge's Report and Recommendation" ("Plaintiff's Objections") (Doc. No. 25). The Court has made a de novo review of the record and, for reasons set forth below, finds that Plaintiff's Objections shall be **OVERRULED**, and the Magistrate Judge's Report and Recommendation shall be **ADOPTED**.

## I.   BACKGROUND

Plaintiff alleges that she became disabled and unable to work due to injuries she sustained on September 14, 1995, when a sewing machine fell onto her back.[1]  (R. 218, 693)[2]  Plaintiff was

---

[1] There is some confusion in the record as to when Plaintiff stopped working. (R. 653, 693)  During Plaintiff's October 2, 2007, Hearing, she indicated that she did not work after her accident on September 14, 1995. (R. 693)  However, her medical records indicate that Plaintiff continued working as a sewing machine operator, on light duty, for several months after her accident. (R. 653)

[2] Reference to the Administrative Record, contained in Docket Entry Number 15, is designated by an "R" followed by the page number.

thirty-four (34) years old at the time of the incident. (R. 19, 693) Prior to this time, she worked as a sewing machine operator. (R. 18) Plaintiff has a sixth grade education, and she is unable to communicate in English. (R. 19, 693)

On November 3, 2005, Plaintiff filed an application for disability insurance benefits. (R. 14) Her application was initially denied on January 17, 2006, and again, upon reconsideration, on March 15, 2006. (R. 14) Plaintiff filed a timely request for a hearing on March 27, 2006. (R. 14) A hearing was held, and on August 28, 2009, the presiding Administrative Law Judge ("ALJ") upheld the denial of Plaintiff's application for disability insurance benefits. (R. 19) The ALJ found that, as Plaintiff was capable of performing a full range of sedentary work, she did not qualify as disabled under the Social Security Act. (R. 18-20) The ALJ further held that, considering Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform." (R. 19)

On February 25, 2009, Plaintiff filed a "Complaint to Review Decision of Commissioner of the Social Security" ("Complaint") (Doc. No. 5). A Report and Recommendation of the Magistrate Judge ("Report and Recommendation") (Doc. No. 23) was issued, affirming the decision of the Commissioner of the Social Security Administration ("Commissioner"). The Magistrate Judge found that the ALJ's decision was supported by substantial evidence in the record and comported with the relevant legal standards. Report and Recommendation 16. On March 22, 2010, Plaintiff filed a timely objection to the Report and Recommendation. *See* Pl.'s Objections. Specifically, Plaintiff objects to the Magistrate Judge's findings that: 1) the ALJ

properly relied on the Medical-Vocational Guidelines[3] ("Guidelines") in determining that Plaintiff did not qualify as disabled; and 2) Plaintiff did not meet the insured status requirement necessary to sustain her claim. Pl.'s Objections 1. This Order addresses Plaintiff's Objections.

## II. DISCUSSION

### A. Standard

A district court shall make a de novo review of those portions of a Magistrate Judge's report and recommendation to which an objection is made. 28 U.S.C. § 636(b)(1). However, in reviewing the Commissioner's final decision, any factual findings made by the Commissioner that are supported by substantial evidence shall be treated as conclusive. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crouchet v. Sullivan*, 885 F.2d 202, 204 (5th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Thus, a district court's review is "limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

---

[3] The Guidelines are a set of rules developed in 1978 to help the Commissioner determine whether there are other jobs in the national economy that an applicant for social security disability benefits is capable of performing. *See Heckler v. Campbell*, 461 U.S. 458, 461 (1983). Prior to the establishment of the Guidelines, the Commissioner relied on vocational experts to make this determination. *Id.* The Guidelines were established "[t]o improve both the uniformity and efficiency" of this process. *Id.*

Upon reviewing a report and recommendation, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," she may "receive further evidence" or she may "recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

B.     **Medical-Vocational Guidelines**

First, Plaintiff argues that the ALJ improperly relied on the Guidelines as support for his decision to deny Plaintiff's application for disability benefits. Pl.'s Objections 5. According to Plaintiff, the ALJ "was required to consult a vocational expert to determine the limitations that her symptoms of pain would have on her ability to perform sedentary work." *Id.* Before addressing Plaintiff's Objections, it is useful for the Court to give context to Plaintiff's challenges by providing a brief overview of how a claim for disability benefits is analyzed.

The Social Security Administration ("SSA") defines "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To qualify as disabled, an individual "must have a severe impairment(s) that makes [her] unable to do [her] past relevant work . . . or any other substantial gainful work that exists in the national economy." *Id.* The ALJ uses a five-step sequential evaluation process to determine whether an applicant is disabled. *See id.* § 404.1520(a)(1); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Crouchet*, 885 F.2d at 204. The five steps are:

> (1) Is the claimant currently working? (2) Can the impairment be classified as severe? (3) Does the impairment meet or equal a listed impairment in Appendix 1 of the [Secretary of Health and Human Service's ("Secretary")] regulations? (If

      so, disability is automatic.)  (4) Can the claimant perform past relevant work? and
      (5) Can the claimant perform other work?
*Crouchet*, 885 F.2d at 204 (citing 20 C.F.R. § 404.1520).

A plaintiff bears the burden of proving that she qualifies as disabled under the first four steps. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995); *Selders*, 914 F.2d at 617.  When a plaintiff is unable to show that her impairment meets or equals an impairment listed in Appendix 1 of the Secretary's regulations, as indicated in step three, the Commissioner "make[s] a finding about [her] residual functional capacity based on all the relevant medical and other evidence in [her] case record, as explained in § 404.1545." 20 C.F.R. § 404.1520.  The residual functional capacity assessment is also used at the fifth step of the sequential evaluation process to determine whether a plaintiff can adjust to other work.  *Id.*

      At the fifth step of the evaluation process, the burden shifts to the Commissioner to show that the plaintiff is capable of performing other work.  *See id.* § 404.1560(c)(2); *see also Loza v. Apfel*, 219 F.3d 378, 398-99 (5th Cir. 2000).  To meet this burden, the Commissioner must consider the plaintiff's "residual functional capacity, together with age, education, and work experience, according to the Medical-Vocational Guidelines," *Selders*, 914 F.2d at 618 (citing 20 C.F.R. § 404.1561), and he must provide evidence that "demonstrates that other work exists in significant numbers in the national economy that [plaintiff] can do, given [her] residual functional capacity and vocational factors."  *See* 20 C.F.R. § 404.1560(c)(2).  "If the [Commissioner] fulfills his burden of pointing out potential alternative employment, 'the burden then shifts back to the claimant to prove that [s]he is unable to perform the alternate work.'" *Selders*, 914 F.3d at 618 (quoting *Fraga v. Bowen*, 810 F.3d 1296, 1301 (5th Cir. 1987)).

      The Supreme Court has held that reliance on the Guidelines is consistent with the

mandates of the Social Security Act. *Heckler v. Campbell*, 461 U.S. 458, 467-68 (1983) ("To require the [Commissioner] to relitigate the existence of jobs in the national economy at each hearing would hinder needlessly an already overburdened agency."); *see also Pate v. Heckler*, 777 F.2d 1023, 1025 (5th Cir. 1985); *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). "The guidelines allow the [Commissioner] to take administrative notice of the existence of jobs in the national economy when a claimant's residual functional capacity, age, education, and previous work experience meet certain specified criteria." *Pate*, 777 F.2d at 1026.

However, where a plaintiff suffers from both exertional impairments (limitations that affect an individual's ability to meet the strength demands of a job) and nonexertional impairments (limitations that affect a plaintiff's ability to meet the non-strength demands of a job), reliance on the Guidelines alone is misplaced unless it can be shown that the plaintiff's nonexertional impairments do not significantly affect her residual functional capacity. *See Selders*, 914 F.2d at 618 (citing 20 C.F.R. §§ 404.1569, Pt. 404, Subpt. P, App. 2; *Fraga*, 810 F.2d at 1304); *see also* 20 C.F.R. §§ 404.1569a(b)-(c)(1) (defining exertional and nonexertional impairments). Where a plaintiff's nonexertional impairments do not significantly affect her residual functional capacity, the Commissioner "may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *Selders*, 914 F.2d at 618; *see also Loza*, 219 F.3d at 398-99; *Crowle v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).

In the instant case, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since September 14, 1995," and that her injury qualified as severe (steps one and two). (R. 16) For step three, having found that her impairment did not meet or equal a listed

impairment in Appendix 1 of the Secretary's regulations, the ALJ considered Plaintiff's age, education, and work experience, and he concluded that Plaintiff "had a residual functional capacity compatible with the performance of 'sedentary' work." (R. 18)  Sedentary work is defined as work involving

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

For step four, the ALJ determined that Plaintiff was unable to perform past relevant work. (R. 18)  Therefore, Plaintiff's disability inquiry turned on whether Plaintiff was capable of performing other work during the relevant time period.  *See Crouchet*, 885 F.2d at 204.  The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity in conjunction with the Guidelines and found that Plaintiff was capable of performing a full range of sedentary work during the period under consideration and did not qualify as disabled under the Guidelines.  (R. 18-19 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.23)).

Plaintiff argues that her nonexertional limitation, pain, precluded the ALJ from relying solely on the Guidelines when determining her eligibility for disability benefits.  Pl.'s Objections 2.  Plaintiff is correct in her assertion that pain may qualify as a nonexertional impairment that limits the range of jobs that she could otherwise perform, *see Fraga*, 810 F.2d at 1304 (citing *Carter v. Heckler*, 712 F.2d 137, 141-42 (5th Cir. 1983)); however, in the instant case, the ALJ found that any nonexertional limitations resulting from Plaintiff's pain were insufficient to significantly affect her ability to perform sedentary work.  (R. 17)  According to the ALJ,

"[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her pain] are not credible to the extent that they are inconsistent with the residual functional capacity assessment." (R. 17)

If there is substantial evidence in the record to support the finding that Plaintiff's nonexertional impairments did not affect her capacity to perform sedentary work, then the ALJ's reliance on the Guidelines was proper. *See* 42 U.S.C. § 405(g). If, however, there is not substantial support for the ALJ's finding, then his reliance on the Guidelines may constitute error. For this reason, the Court now turns its attention to whether the ALJ's decision was supported by substantial evidence.

A review of the record reveals that there is substantial evidence to support the ALJ's finding that Plaintiff's nonexertional impairments did not significantly affect her ability to perform sedentary work. First, Dr. James W. Bean's ("Bean") September, 12, 1996, medical report indicated that Plaintiff had "some ability to work but with diminished strength." (R. 397) Prior to this report, Plaintiff underwent a decompression procedure, and Bean indicated that she did very well postoperatively and was able to recover her full range of motion. (R. 397) Bean recommended that Plaintiff enroll in "vocational retraining and potentially another line of work if she is not able to return back to the work that she was previously employed [sic]." (R. 397-98) Bean's analysis is consistent with the ALJ's finding that Plaintiff is capable of sedentary work.

Another treating physician, Dr. Robert R. Bell ("Bell"), stated that he believed that Plaintiff was engaging in "heavy conscious or subconscious pain amplification" and possibly malingering. (R. 303-04) On August 1, 1997, Plaintiff underwent rotator cuff repair surgery. (R. 371) Following the surgery, Dr. Gerald Halaby ("Halaby") found that her "passive range of

motion" was improving. (R. 208) He also noted that a Transcutaneous Electrical Nerve Stimulation ("TNS") machine was effective in controlling her pain and recommended that one be purchased for her care. (R. 203) On October 20, 1997, and again on January 28, 1998, and March 16, 1998, Halaby found that Plaintiff was capable of performing a full passive range of motion. (R. 191, 192, 197) On June 22, 2002, Board Certified Pain Management Specialist Dr. Manouchehr Refaeian ("Refaeian") noted that, while Plaintiff had undergone lengthy treatment, including injections, surgeries and therapy, he felt that continuation of such treatment was no longer necessary. (R. 353) Instead, he suggested that Plaintiff take Extra Strength Tylenol, as needed, along with over-the-counter creams, to control her pain symptoms. (R. 353)

For her part, Plaintiff argues that record is "replete with evidence" that her frequent pain limited the activities that she was capable of performing. Pl.'s Objections 3. As support for her argument, she points to Bell's report that the medication he prescribed was ineffective in relieving her pain and that therapy only served to increase her pain. *Id.* (citing R. 219-20). She also cites Halaby's record of her symptoms, which include frequent headaches, pain to her left shoulder blades, neck pain, numbness and swelling to the left arm; Halaby's July 15, 1997, evaluation note that Plaintiff "[a]wakens in the night,"; Bell's September 15, 1995, medical report which indicates that Plaintiff was experiencing significant pain; her therapist's report that Plaintiff had persistent pain in her upper trapezius and left shoulder; and Dr. Manuel Moreno's ("Moreno") report that she had experienced severe pain since her rotator cuff injury. *Id.* at 3-4 (citing R. 219-21, 280, 380, 441).

It is important to note, however, that the aforementioned medical reports were drafted prior to Plaintiff's rotator cuff repair surgery in August 1997. As such, they provide little support

for her postoperative disability claim. As postoperative evidence of her nonexertional limitations, Plaintiff cites Halaby's reports of her consistent pain and his March 16, 1998, finding that Plaintiff's injuries rendered her unable to work. *Id.* at 4 (citing R. 131).[4] Although, on March 16, 1998, Halaby recommended that Plaintiff refrain from working, he reported that Plaintiff was capable of performing "light duty work" approximately two months prior to, and approximately two months after, his recommendation that Plaintiff remain off of work. (R. 414, 421) Thus, any evidence that Plaintiff was not capable of performing sedentary work does not appear to have lasted "for a continuous period of not less than 12 months," as required for her to qualify as disabled. *See* 20 C.F.R. § 404.1505(a). Furthermore, Plaintiff's "[p]ersistent pain in the left shoulder" was found to vary in intensity in relation to her "degree of activity," indicating that sedentary work would be less likely to irritate her injury. (R. 418)

Although Plaintiff argues that the ALJ placed too much weight on the medical opinion of Bell, who believed that Plaintiff's compliance with her recommended treatment was "extremely poor" and that she exhibited signs of "pain amplification," (R. 303-04), "the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" *See Greenspan*, 38 F.3d at 237 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). Plaintiff is correct in noting that opinions of treating physicians should be "accorded great weight" in determining a plaintiff's disability. Pl.'s Objections 4 (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). However, as Bell was one of Plaintiff's treating

---

[4] Plaintiff appears to be citing Halaby's March 16, 1998, Letter, which is located on page 418 of the Administrative Record. (R. 418) Page 131 of the Administrative Record is a Field Office Disability Report that does not contain the stated recommendation.

physicians, it is unclear why his opinion should be accorded less weight than Plaintiff's other treating physicians.[5] Moreover, Bell was not the only physician who suspected that Plaintiff's symptoms of pain were exaggerated. Dr. Jeff Cunningham ("Cunningham") noted that Plaintiff showed signs of "overreaction to stimulus" and that, while he "gave [her] the benefit of the doubt in her complaints of low back pain[,] . . . even that was a questionable call." (R. 356, 358, 372)

The ALJ's decision has substantial support in the record. Although there is evidence that Plaintiff's injury caused her pain, the standard that the Court must apply is whether there is substantial evidence to support the ALJ's decision and not whether the evidence could possibly lead the Court to a contrary finding. *See Selders*, 914 F.2d at 617. Because there is substantial evidence that Plaintiff's pain did not significantly affect her ability to perform sedentary work, the ALJ's reliance on the Guidelines was proper.

Next, Plaintiff argues that, "[e]ven assuming that the [Guidelines] were properly used in this case, a vocational expert was required to determine what jobs were available in the national economy that [she] could perform given her exertional and non-exertional limitations." Pl.'s Objections 6. This, however, is not an accurate statement of law. The Guidelines "relieve the [Commissioner] of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler*, 461 U.S. at 461. "If impairments are solely exertional or the nonexertional impairments do not sufficiently affect the claimant's residual functional capacity, then the Commissioner may rely exclusively on the

---

[5] In fact, Plaintiff urges the Court to consider other medical reports drafted by Bell which support her disability claim. Pl.'s Objections 3. However, the ALJ must consider the record as a whole and not limit his analysis to evidence that is favorable to Plaintiff's claim. *See Loza v. Apfel*, 219 F.3d 378, 389 (5th Cir. 2000).

[Guidelines] to determine whether there is other work in the economy that the claimant can perform." *Newton*, 209 F.3d at 458; *see also Fraga*, 810 F.2d at 1304. Because there is substantial evidence to support the ALJ's finding that Plaintiff's nonexertional impairments did not significantly affect her residual functional capacity, the ALJ was not required to consult a vocational expert to establish that relevant jobs existed in the national economy.

Plaintiff further argues that the ALJ failed to specifically identify particular jobs in the national economy that Plaintiff could perform given her impairments. Pl.'s Objections 2. However, this argument, too, is misplaced. The Guidelines afford applicants with necessary procedural protections, thus obviating the need for the Commissioner or ALJ to specifically identify relevant jobs available in the national economy. *See Heckler*, 461 U.S. at 469-70; *see also Rivers*, 684 F.2d at 1152. In *Rivers*, the Fifth Circuit noted that, by applying "the rule-making process in which the guidelines have been developed," the Commissioner "has taken administrative notice of the existence of many jobs in the national economy." *Rivers*, 684 F.2d at 1152 (citing *Torres v. Schweiker*, 677 F.2d 167, 168 (1st Cir. 1982)) (internal quotation marks omitted). Therefore, "the determination of 'not disabled' under the guidelines, while based on the individualized findings relating to residual functional capacity, age, education and work experience, *is also premised on administrative notice that jobs exist in the national economy*." *Id.* at 1153 (emphasis added); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00(b) (noting that "administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy and very heavy)"). The Guidelines themselves "satisfy the [Commissioner's] burden of persuasion to show that a claimant can perform substantial gainful activity." *Rivers*, 684 F.2d at 1153. "The

existence of jobs (or the lack of such jobs) requiring (or allowing for) those specific medical and vocational factors has been previously identified." *Id.* The Commissioner was not required to identify them again.

Lastly, Plaintiff argues that the ALJ failed to determine whether Plaintiff had the capacity to perform all seven strength demands required of sedentary work. Pl.'s Objections 5 (citing *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)). The seven strength demands are "sitting, standing, walking, lifting, carrying, pushing, and pulling." *See Myers*, 238 F.3d at 620. Although Plaintiff argues that the ALJ failed to conduct the required analysis, the ALJ made the following finding:

> The evidence supports that Ms. Marquez was . . . . able to lift five pounds frequently and ten pounds occasionally; sit six cumulative hours per workday; stand and walk two cumulative hours per workday; push/pull with her upper and lower extremities within the strength limitations cited; perform frequent postural activities; perform manipulative activities within the specific strength limitations cited; and had no visual, communicative, or environmental limitations.

(R. 18)[6]

Thus, it appears that Plaintiff's claim that the ALJ failed to evaluate her ability to perform the seven strength demands is unfounded.

In sum, the Court finds that the ALJ's determination that Plaintiff's nonexertional limitations did not significantly affect her residual functional capacity to perform sedentary work is supported by substantial evidence in the record. For this reason, the ALJ's finding is treated as conclusive. *See* 42 U.S.C. § 405(g). Because Plaintiff's nonexertional limitations did not

---

[6] Although the ALJ did not specifically use the word "carrying," his finding that Plaintiff was able to "lift five pounds frequently and ten pounds occasionally" appears to satisfy this requirement, as sedentary work only requires that an individual "occasionally . . . carry[] articles like docket files, ledgers, and small tools." *See* 20 C.F.R. § 404.1567(a).

significantly affect her residual functional capacity to perform sedentary work, the ALJ was not required to consult a vocational expert prior to determining whether there existed other work available in the national economy for Plaintiff to perform. Nor was he required to specifically identify particular jobs that Plaintiff was capable of performing. *See Selders*, 914 F.2d at 618.

### C. Insured status requirement

Next, Plaintiff argues that she qualified as disabled prior to the expiration of her disability insured status on March 31, 1998. Pl.'s Objections 4. In order to qualify for disability insurance benefits, an individual must have been insured for such benefits at the time she became disabled. 42 U.S.C. § 423(a). Neither party disputes that Plaintiff's insured status expired on March 31, 1998; however, whereas both the ALJ and the Magistrate Judge found that Plaintiff failed to show that she qualified as disabled prior to that date, Plaintiff argues that she has met this burden. Pl.'s Objections 4-5.

As previously discussed, the ALJ found that Plaintiff was capable of performing sedentary work and properly relied on the Guidelines to reach a determination that Plaintiff did not qualify as disabled. Therefore, the burden shifts back to Plaintiff to show that she was incapable of performing sedentary work during the relevant period. *Selders*, 914 F.3d at 618 (quoting *Fraga*, 810 F.3d at 1301).

Plaintiff has failed to meet her burden of establishing that she was disabled on or before March 30, 1998. None of the medical reports that Plaintiff references in her Objections indicate that her impairment did or would render her incapable of performing sedentary work for a continuous period greater than or equal to one year. *See* 20 C.F.R. § 404.1505(a). As support for her assertion, Plaintiff points to last report that Halaby issued prior to the expiration of her

insured status on March 16, 1998. (R. 131) As noted above, although the report indicates that Plaintiff was "to remain off work," (R. 131), similar reports issued in January 1998 and June 1998 indicate that Plaintiff was capable of performing "light duty work" immediately prior to, and immediately after, the March 16, 1998, report. (R. 414, 421) As light duty work is more strenuous than sedentary work, *see* 20 C.F.R. §§ 404.1567(a)-(b), the evidence undermines Plaintiff's assertion that she was incapable of performing sedentary work at this time. Furthermore, Halaby's reports do not indicate that Plaintiff was incapable of performing sedentary work for a continuous period of at least one year.

Plaintiff has failed to meet her burden of showing that she was incapable of performing sedentary work, and the Court finds that the ALJ's determination that she was not disabled on or before March 30, 1998, is supported by substantial evidence in the record and comports with the applicable legal standards.

## III.   CONCLUSION

For reasons set forth herein, Plaintiff's Objections (Doc. No. 25) are hereby **OVERRULED**. The Magistrate Judge's Report and Recommendation shall be **ADOPTED** as the findings and conclusions of the Court, and the above-captioned cause is hereby **DISMISSED**.

The Clerk shall close the case.

**SO ORDERED**.

**SIGNED** on this 30th day of March, 2010.

_/s/ Kathleen Cardone_
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE